HENRY BENTE, PROSECUTOR, v. NEWTON A. K. BUGBEE, COMPTROLLER OF THE TREASURY OF THE STATE OF NEW JERSEY, DEFENDANT.

MARGARETHA BENTE, PROSECUTOR, v. NEWTON A. K. BUGBEE, COMPTROLLER OF THE TREASURY OF THE STATE OF NEW JERSEY, DEFENDANT.

Argued May 6, 1925—Decided August 6, 1925.

**Wills—Inheritance Tax—Testator Entered Into a Contract With Plaintiffs to Leave a Certain Sum to Them in His Will in Consideration of a Home During the Remainder of His Life —Upon His Death the Bequests Were Found to Have Been Crossed Out of the Will—Judgment on the Contract was Awarded Plaintiffs—State Thereupon Assessed an Inheritance Tax Which is Here Contested on the Ground That the Act Does Not Contemplate Taxation of Judgments—Held, That Judgment was Not on Contract to Recover for Services Rendered, but for the Fulfillment of the Contract to Leave the Stipulated Sum in the Will, That Such Sum Would Include the Payment of the Tax by the Beneficiary.**

On writs of *certiorari.*

Before Justices TRENCHARD, KATZENBACH and LLOYD.

For the prosecutors, *J. Emil Walscheid.*

For the defendant, *Edward L. Katzenbach* and *Harry R. Coulomb.*

PER CURIAM.

The writs of *certiorari* in the above cases were allowed to review the action of the comptroller of the treasury of the State of New Jersey in imposing a transfer inheritance tax upon the amount of two judgments recovered by Henry Bente and Margaretha Bente against the Trust Company of New Jersey, executor of the last will and testament of Charles Steinberg. It was stipulated, as each case presents

the same question, that the record in the case of Henry Bente should be presented to the court, and the decision reached in this case should control the disposition of the Margaretha Bente case.

The question presented is unique and interesting. Charles Steinberg, the decedent, was a man possessed of considerable means. He had been a cigar salesman and had retired from business. He desired a home. He entered into an agreement with Henry Bente and Margaretha Bente, husband and wife, who live in Hoboken, by which they agreed to furnish a home for him for the remainder of his life, provided he would leave to each of them in his will the sum of $15,000. In accordance with this agreement, Mr. Steinberg, on November 15th, 1920, executed his will, in which he left to Henry Bente $15,000 and his personal effects, and to Margaretha Bente the sum of $15,000. He then took up his residence with Mr. and Mrs. Bente. They decided to move into a larger house. Mr. Steinberg temporarily took a room in the house of a Miss Pustkuchen. This arrangement appears to have been entered into by mutual consent. Mr. Steinberg did not again take up his residence with the Bentes. This was in part due to an illness which commenced in August, 1922, and in part due to the fact that he was waiting for cooler weather and the completion of the apartment of the Bentes. The new apartment was on the third floor. There was no elevator service. This was another reason for not resuming his residence with the Bentes. On November 1st, 1922, Mr. Steinberg became worse. He was taken to a hospital on that day and died on the following day. When his will was opened it was discovered that there was a line drawn through the bequests to Henry Bente and Margaretha Bente. In the bequest to Margaretha Bente the whole clause was eliminated. In the bequest to Henry Bente only the $15,000 item was eliminated. The clause bequeathing his personal effects to Henry Bente was not erased. Mr. and Mrs. Bente then each presented a claim to the executor of the Steinberg estate for the sum of $15,000.

Notice was given to each of them that the claim was contested. Suits were instituted by Mr. and Mrs. Bente in the Hudson County Circuit Court. Each recovered a judgment of $15,000 against the executor of Mr. Steinberg's will. The comptroller of the treasury then assessed a transfer inheritance tax upon the sums represented by the judgments.

Counsel for the prosecutors contends that these judgments cannot, under the provisions of the Inheritance Tax act, be taxed. The argument advanced is that the act enumerates in its title the methods for the transfer of property to which the scope of the act is limited; that these methods are eight in number and are the transfers of property by (1) devise, (2) bequest, (3) descent, (4) distribution, (5) gift, (6) deed, (7) grant, (8) bargain and sale; that a judgment at law is not a transfer of property and does not fall within any of the classifications above set forth, and, therefore, the act cannot be made to apply to a judgment at law. It is further insisted that the body of the act contains further limitations upon its scope, which prevents the proposed tax falling within the purview of the body of the act.

The prosecutors present as their first point that the comptroller was without jurisdiction to impose a tax because the tax levied against judgments recovered to obtain debts due and owing by the estate of the decedent which is not a transfer of property within the meaning of the act. The argument of the prosecutors is plausible and ingenious, but overlooks, we think, one important element, namely, that the agreement between the Bentes and Steinberg contained the provision that the bequests were to be embodied in the will of Steinberg, and had they remained in the will the amounts bequeathed would have been subject to the inheritance tax. The effect of the judgments, it seems to us, was merely to restore the status as it would have been had the erasures of the bequests set forth in the will not been made. The judgments could not have been obtained for the sums mentioned had it not been for the agreement by which the amount the Bentes were to receive was to be bequeathed to the

Bentes for the services they were to render to Steinberg. The agreement was not to pay to each $15,000 at the death of Mr. Steinberg, but to leave to each a bequest for that amount. The reasonable value of the services rendered were doubtless below the amounts which were recovered in the acts at law. This rcovery was possible because of the form which the contract took. The judgments were the medium by which it was possible to carry into effect the terms of the agreement between Steinberg and the Bentes. The contract, if carried out, in its original form would have resulted in a tax against the bequests. It seems illogical that the mere change of the vehicle by which the contract is consummated should exempt the Bentes from the payment of a tax which they would have had to pay if Steinberg had not made the erasures in his will. The effect of the judgments was not to set aside the will, but to convert those who would receive, by reason of the erasures, the bequests originally intended for the Bentes into trustees for the Bentes to the extent of such bequests. We do not see how the Bentes are entitled to receive more as a result of what occurred than they would have received as legatees under the will if the contract as originally made had been executed by leaving in the will the bequests originally made. The rights of the Bentes could arise no higher than those which they obtained under the agreement as made. If the argument advanced in behalf of the prosecutors is accepted the Bentes would obtain an advantage, namely, exemption from the imposition of the tax, which they would not have obtained had the agreement been carried out as planned and intended by the parties. It is conceded that if no erasures in the will had been made the legacies would be subject to the tax. The obtaining of judgments was a method of procedure to establish the contents of the will as originally drafted. The effect of the judgments was to restore the original provisions of the will. Under the will the bequests were taxable. We think they are taxable in the manner proposed by the state and fall

within the provisions of the title and body of the act as property transferred by bequest.

The prosecutors also contend that the tax is levied upon a service rendered by the prosecutors and for that reason is untaxable. In other words, it is not a succession tax. The theory of a succession tax is payment to the state for the privilege of exercising the right of testamentary disposition, &c. The prosecutors advance the argument that the consideration paid by the Bentes, namely, the board and lodging to be furnished Steinberg, takes their cases out of the class of taxable cases and places them in the same position as where, for example securities have been transferred to a woman under a prenuptial marriage settlement. Cases to this effect are cited upon the brief presented for the prosecutors. This argument, we think, overlooks a very essential feature of the contract made in the cases under consideration. The element overlooked is that while the Bentes were to furnish during the lifetime of Steinberg a home for him, payment was to be in the form of bequests to be made in his will. Payment was contingent upon the death of Steinberg. This provision takes the agreement out of the ordinary class of agreements for services rendered which, if reduced to a judgment, would be exempt from taxation. If the plaintiffs in the actions instituted had not been able to introduce in evidence the will with its erasures showing the contract to make bequests, in consideration of the services to be rendered by them, the judgments for $15,000 each would not have been obtainable. If the prosecutors had sought relief in equity by asking to have the cancellations made in the will expunged and the bequests in the will as originally drafted restored, it could not be gainsaid that the bequests would not be subject to the tax. The adoption of another route (the judgments) to enforce the carrying out of the agreement, cannot, in our opinion, close the door to the state exercising the right of taxation, which it concededly would have had had Mr. Steinberg not attempted to erase the tes-

tamentary provision made to carry out the contract with the prosecutor.

We have not commented upon the numerous cases cited in the briefs, as all present a state of facts differing in some measure from the facts of the cases under consideration. The principles involved in the cases cited we feel we have applied to the instant case.

The taxes assessed by the comptroller are affirmed, with costs.